IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

BOBBIE GREEN                                                                                            PLAINTIFF

VS.                                            CASE NO. 07-CV-4032

CITY OF TEXARKANA, ARKANSAS and
Todd Harness (Individually and in his official
capacity as a Police Officer of the City of Texarkana)                          DEFENDANTS

### MEMORANDUM OPINION

Before the Court is a Substitute Motion for Summary Judgment filed on behalf of Defendants the City of Texarkana, Arkansas, ("City") and Todd Harness and Holly Monroe, individually and in their official capacity as police officers for the City of Texarkana, Arkansas. (Doc. 38). Plaintiff Bobbie Green has responded. (Doc. 43). The Court finds the matter ripe for consideration.

### BACKGROUND

On October 25, 2005, plaintiff Bobbie Green, an over-the-road truck driver, parked her truck at the Flying J Truck Stop ("Truck Stop") in Texarkana, Arkansas for the night. Around 1:00 a.m., Plaintiff left her truck and walked across the parking lot to the Truck Stop in order to use the restroom. While returning to her truck, Plaintiff heard someone ask her three times if she was a prostitute. Plaintiff used her middle finger to make an obscene gesture toward the man. The man met Plaintiff at her truck and it was at this time that Plaintiff realized he was a Truck Stop security guard. The security guard then informed Plaintiff that she was going to have to leave the Truck Stop. Plaintiff refused to leave and got back in her truck. The security guard called the police. Defendants,

Officer Harness and Officer Monroe responded to the call.[1]

The parties dispute what happened at this point.[2]

According to Plaintiff, she was asleep in the sleeper of her truck when Defendant Harness came to her truck and demanded she exit. Plaintiff cracked her truck door to tell Defendant Harness that she needed to get dressed before she exited the truck. When Plaintiff cracked open the door, Defendant Harness pulled her out of the truck, threw her on the pavement, pushed her head down, and put his knees in her back. At this time, Plaintiff was still only wearing a pair of panties, and she objected to being pulled out of the truck while she was in a state of undress. Plaintiff began using profanity at Defendant Harness when he pushed her head into the pavement. Plaintiff was then pulled up from the pavement and forced to stand in the Truck Stop parking lot for approximately twenty minutes while Defendant Harness searched her truck. Plaintiff was exposed not only to the officers but also to the other truckers who were passing through the parking lot. Defendant Harness then instructed Defendant Monroe to place Plaintiff under arrest. Plaintiff resisted Defendant Monroe's attempts to handcuff her.

After arresting Plaintiff, Defendants Harness and Monroe placed her in the back seat of the police car and drove her to the Bi-State Detention Center via the back roads. Defendant Harness never allowed Plaintiff to get any clothing from her truck, nor did he provide Plaintiff with anything to cover herself with while she was standing in the parking lot at the Truck Stop or while riding to

---

[1] At the time of the incident at issue, Holly Monroe was only a cadet and not yet a police officer. She was riding along with Officer Harness as part of her training.

[2] Where there are factual disputes, the Court bases the following summary on accounts provided by plaintiff, the nonmoving party. *See Mettler v. Whitledge*, 165 F.3d 1197, 1200 (8th Cir. 1999).

the jail. Plaintiff was taken to Bi-State Detention Center where she was removed from the police car, taken inside the building, and up the elevator to the detention center. Once plaintiff arrived inside the detention center, a detention center employee offered her a jumpsuit to cover herself.

According to the District Court of Texarkana, Arkansas Trial Transcript, Plaintiff plead not guilty to the charges of disorderly conduct and failure to submit to arrest that resulted from the above described incident. She was found guilty on both charges as well as forfeiting her bond as a civil penalty. (Doc. 24-4). Plaintiff did not challenge these charges in criminal court because she could not take time away from her job for the litigation.

In Plaintiff's Complaint, she alleges as a result of this arrest she has suffered a violation of her Fourth and Fourteenth Amendment rights. Plaintiff brings this action against Defendants Harness and Monroe, individually and in their official capacity and the City of Texarkana, Arkansas, pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988. Plaintiff alleges she was deprived of her liberty, subjected to cruel and unusual punishment, and that Defendants Harness and Monroe were negligent and committed a willful tort against Plaintiff.[3] This case is now before the court on Defendants' Substituted Motion of Summary Judgment.

## SUMMARY JUDGMENT STANDARD

The standard of review for summary judgment is well established under Rule 56(c) of the Federal Rules of Civil Procedure. A summary judgment motion should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

---

[3] The Court assumes Plaintiff admits Defendants' statement in footnote one of the Brief in Support of Substitute Motion for Summary Judgment, which states; Plaintiff's negligence claims from her Complaint are subsumed within the specific constitutional deprivations she claims because she did not address this statement in her response. (Doc. 39).

as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed. 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct 2505, 91 L.Ed. 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party, giving her the benefit of all reasonable factual inferences. *Reed v. ULS Corp.,* 178 F.3d 988, 990 (8th Cir. 1999). The moving parties bear the burden of showing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Enterprise Bank v. Magna Bank of Missouri,* 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party meets this burden, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on the issue. *Anderson*, 477 U.S. at 249. To avoid summary judgment the non-movant must go beyond the pleadings and come forward with specific facts, "by [her] own affidavit," or by "depositions, answers to interrogatories, and admissions on file," and designate specific facts showing there are genuine issues for trial. *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

Defendants move for summary judgment on all official claims asserted against the City of Texarkana, Arkansas and Defendants Harness and Monroe. In addition, Defendants move for summary judgment on all claims asserted against Defendants Harness and Monroe in their personal capacity as they are entitled to qualified immunity.

## DISCUSSION

The Court notes, as an initial matter, that in her Brief in Support of Response to Motion for Summary Judgment, Plaintiff claims Defendants violated her constitutional right to privacy

4

by arresting her and transporting her to the jail while she was unclothed. (Doc. 20). The Court finds that Plaintiff has not properly asserted a right to privacy violation. Plaintiff did not allege a right to privacy claim in her Complaint and cannot raise it, for the first time, in response to a motion for summary judgment. (Doc. 1). For this reason, the Court will not consider a separate right to privacy claim in this opinion. However, in considering Plaintiff's unlawful arrest claim the Court will consider whether Defendants Harness and Monroe acted reasonably in detaining and arresting Plaintiff while she was unclothed.

### A) Official Capacity Claim

It is well established that under 42 U.S.C. § 1983 a municipality may not be held vicariously liable for the unconstitutional acts of employees unless these acts are an execution of the municipality's policy or customs. *See Monell v. Dep't of Soc. Services,* 436 U.S. 658, 691, 98 S.Ct. 2018 (1978). The policy or custom in question need not be officially approved by the body's official decisionmaking channels, but it must be so permanent and well settled as to constitute "a custom or usage with the force of law." *Id.* For a municipality to be liable, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] the constitutional violation." *Monell*, 436 U.S. at 694. "To establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action." *Parrish v. Luckie*, 963 F.2d 201, 204 (8th Cir. 1992).

Plaintiff alleges that the City is liable for violating her constitutional rights because Defendants Harness and Monroe were serving as agents of the City and were acting under color of law with full authority from the City when they arrested Plaintiff, violating her constitutional rights

5

to be free from unlawful arrest and cruel and unusual punishment. ("unconstitutional misconduct"). This agency argument is misplaced as the law states that municipalities cannot be held liable under 42 U.S.C. § 1983 on a respondeat superior theory. *Monell*, 436 U.S. at 691. Instead, Plaintiff must prove that genuine issues of material facts exist as to whether the City had a policy or custom of allowing the specified unconstitutional misconduct by police officers. *Id*. at 694. An official policy involves the City making a "deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy." *Jane Doe A. v. Special Sch. Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir. 1990). Plaintiff has made no offering of any facts to create a genuine issue of material fact as to whether the City had an official policy of allowing unconstitutional misconduct by Defendants Harness and Monroe or any other police officers.

The City may also be liable if Plaintiff establishes the existence of a custom by showing a pattern of "persistent and widespread" unconstitutional practices by the police officers while making arrests which have become so "permanent and well settled as to have the effect and force of law." *Jane Doe*, 901 F.2d at 646 (quoting *Monell*, 436 U.S. at 691). To establish a custom, Plaintiff must prove: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the City's police officers; (2) the City knew of the misconduct; (3) the City showed deliberate indifference to or tacit authorization of such conduct; and (4) Plaintiff was injured as a result of the City's custom. *Jane Doe A.*, 901 F.2d at 646. Because Plaintiff failed to allege the City had a custom, she presented no evidence to establish a genuine issue of material fact concerning any of the above three requirements for a municipal custom. Therefore, Plaintiff has failed to meet her burden under Federal Rule of Civil Procedure 56.

There is no evidence in the record on which a reasonable jury could find the City had a policy or custom of allowing their officers to violate arrestees' constitutional rights by engaging in unlawful arrest, or cruel and unusual punishment. Thus, the City and Defendants Harness and Monroe in their official capacity are entitled to summary judgment on all official capacity claims.

### B) Individual Capacity

In response to Plaintiff's individual capacity claims against them, Defendants Harness and Monroe have asserted qualified immunity. Qualified immunity shields the officers from liability for civil damages unless they "*knew or reasonably should have known* that the action [they] took within [their] sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if [they] took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed. 396 (1982) (emphasis in original). Qualified immunity is not simply a defense to liability—it constitutes immunity from suit. *Hanig v. Lee,* 415 F.3d 822, 824 (8th Cir. 2005). In order for Plaintiff to withstand a motion for summary judgment on qualified immunity grounds, she must: "(1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated the Plaintiff's clearly established right." *Brockington v. City of Sherwood,* 503 F.3d 667, 672 (8th Cir. 2007). It is necessary to analyze this three-prong test within each of Plaintiff's constitutional violation claims.

### 1) Unlawful Arrest

It is unclear to the Court the legal basis on which Plaintiff predicates her claim of unlawful arrest. Plaintiff argues in her Brief in Support of Response to Motion for Summary Judgment that:

"It is clear from the statements of both Plaintiff and Defendant Harness, given by sworn deposition, that [Plaintiff] was arrested only because she objected to, and resisted, being held in public view while she was in a state of undress. It is clear from Defendant [Harness's] statement that Plaintiff was not arrested because of anything she did prior to being removed from the sleeper camper of her truck." (Doc. 45). The Court infers from this assertion the claim to be one of a violation of Plaintiff's Fourth Amendment right to be free from unlawful seizure and will address it as such.

The Fourth Amendment guarantees "the right of the people to be secure in their persons against unreasonable searches and seizures...." U.S. Const. amend. IV. "A police officer may arrest a person if he has probable cause to believe that person committed a crime." *Tennessee v. Garner,* 471 U.S. 1, 8-9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). However, probable cause alone does not satisfy the Fourth Amendment, the manner in which a seizure is conducted must also be reasonable. *Id.* In other words, a seizure may be invalid even though it is supported by probable cause if it is carried out in an unreasonable fashion.

The threshold question the Court must answer is "whether a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officer possessed." *Arnott v. Matay*, 995 F.2d 121, 123 (8th Cir. 1993). However, even if probable cause is in fact absent, the officer may still be entitled to qualified immunity if he reasonably believed he had probable cause to make a lawful arrest. *Id.* Additionally, an officer does not violate the Fourth Amendment if he "has probable cause to believe that an individual has committed even a very minor criminal offense in his presence." *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). While the general rule is in favor of the Court deciding qualified immunity as a matter of law at the earliest stage possible, if the officer's

alleged facts, giving rise to probable cause, are disputed by plaintiff then a genuine issue of material fact exists and the officer is not entitled to qualified immunity. *Arnott*, 995 F.2d at 124.

The record states that Defendants Harness and Monroe were investigating a complaint against Plaintiff and it is that complaint that lead them to knock on her truck door. Taking the facts in the light most favorable to Plaintiff, Defendant Harness then pulled her out of the truck and shoved her to the ground. Plaintiff was wearing only panties at this time. Plaintiff admits to using profanity toward Defendant Harness. After Plaintiff was forced to stand in the parking lot of the Truck Stop for approximately twenty minutes, she was arrested by Defendant Monroe. Plaintiff admits she resisted being handcuffed by "wrestling" with Defendant Monroe. (Plaintiff's Deposition Doc. 24-3). According to the record, Plaintiff was charged with disorderly conduct and resisting arrest. Disorderly conduct, as defined by the Arkansas Code, includes using "abusive or obscene language in a public place in a manner likely to provoke a violent or disorderly response." Ark. Code Ann. § 5-71-207(a)(3) (2007). Plaintiff, by her own admission, was using profanity at Defendant Harness and resisting being pulled from her truck.

Defendants Harness and Monroe witnessed Plaintiff's conduct–using profanity at Defendant Harness–that constituted disorderly conduct. Because Plaintiff does not dispute these allegations, she has not created a genuine issue of material fact regarding Defendants Harness and Monroe's reasonable belief they had probable cause to lawfully arrest her. Based on the facts taken in the light most favorable to Plaintiff, no reasonable jury could find Defendants Harness and Monroe believed the arrest to be unlawful in light of the clearly established law against disorderly conduct which occurred in Defendants Harness and Monroe's presence.

Plaintiff argues that because she was not arrested for anything she did prior to being

removed from her truck that the arrest was unlawful. Plaintiff offers no facts on which she bases this argument, nor does she dispute any material facts as to the reasonableness of Defendants Harness and Monroe's belief that they had probable cause to arrest her. Defendant Harness was acting on a complaint made by the security guard when he removed Plaintiff from her truck. While it is unclear from the record exactly what the security guard's complaint against Plaintiff entailed, the Court infers it was based on the interaction between the Plaintiff and the security guard in which he called her a prostitute, she directed an obscene gesture toward him, he told her to leave, and she refused. As stated above, when the Court is determining whether an officer is entitled to qualified immunity from an unlawful arrest claim, the outcome hinges on whether Plaintiff presents facts in dispute which are material to the officer's reasonable belief he had probable cause to arrest. *Arnott,* 995 F.2d at 124. Defendant Harness alleges he was reasonable in his belief that he needed to investigate whether Plaintiff had previously or was currently committing a crime based on the fact that he had received a complaint, and Plaintiff offers no facts to contradict this assertion. The fact that it was ultimately Plaintiff's actions during Defendants Harness and Monroe's investigation, rather than the acts compelling the initial complaint that lead to her arrest, does not diminish the reasonableness in Defendants Harness and Monroe's belief that they had probable cause to arrest Plaintiff for conduct she admitted to committing in their presence.[4] Therefore, there are no issues of material facts as to

---

[4] While Plaintiff asserts that it was only her actions after being pulled from the truck that lead to her arrest, the Court notes that obscene gestures may also be considered disorderly conduct, Ark. Code Ann. § 5-71-207(a)(3) (2007), and Plaintiff presents no facts to indicate that it was not her obscene gesture, which she admitted occurred, in addition to her use of profanity that lead to her arrest for disorderly conduct. Regardless to whether it was Plaintiff's obscene gesture toward the security guard or using profanity at Defendant Harness, Plaintiff has not produced any issues of material facts as to Defendants Harness and Monroe's reasonable believe they had probable cause to arrest Plaintiff.

whether Defendants Harness and Monroe had probable cause to arrest Plaintiff.

The Court now addresses whether Defendants Harness and Monroe conducted the detention and arrest of Plaintiff in a reasonable fashion as required by the Fourth Amendment. As stated above, to overcome qualified immunity, Plaintiff must first assert a constitutional violation. *Brockington,* 503 F.3d at 672. Plaintiff has done this. A seizure may be invalid even if it is supported by probable cause if it is carried out in an unreasonable fashion. *Tennessee v. Garner,* 471 U.S. at 8-9. Plaintiff has asserted it was unreasonable to detain and then arrest her while she was wearing only panties. Even though the Court has found there are no genuine issues of material facts as to Defendants Harness and Monroe's reasonable believe that they had probable cause to arrest Plaintiff, there may be genuine issues of material facts as to whether Defendants Harness and Monroe conducted the seizure in a reasonable manner.

Second, Plaintiff must demonstrate that the alleged right is clearly established. *Brockington,* 503 F.3d at 672. In determining whether the constitutional violation is clearly established, the Court must consider the specific context of the case. *Hill v. McKinley*, 311 F.3d 899, 904 (8th Cir. 2002). The Eighth Circuit has stated:

> "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful: but it is to say that in the light of preexisting law the unlawfulness must be apparent."

*Id.* (quoting *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002). There must be sufficiently analogous precedent to put a reasonable officer on notice that his conduct was unconstitutional. *Id.*

The Supreme Court has stated that in determining whether the seizure of a person is

11

reasonable a court must pay careful attention "to the facts and circumstances of each case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor,* 490 U.S. 386, 387, 109 S.Ct. 1865, 1867, 104 L.Ed.2d 443 (1983) (excessive force case). The Court is not limited to the *Graham* factors, but instead must consider the totality of the circumstances in determining whether the particular type of seizure is justified. *Tennessee v. Garner,* 471 U.S. at 8-9. The Ninth Circuit explained that a detention conducted in connection with a search may be unreasonable under the Fourth Amendment if it is unnecessarily painful, degrading or prolonged, or if it involves undue invasion of privacy. *Franklin v. Foxworth,* 31 F.3d 873, 875 (9th Cir. 1994) (holding that removing a bed ridden man from his bed and placing him on couch with his genitals exposed to approximately 25 officers executing a search warrant was wholly unreasonable).The *Franklin* court determined that the *Graham* test is applicable to any type of seizure and not just to the use of force. *Id.* at 876. When a suspect's constitutional right to bodily privacy is implicated the reasonableness of the seizure receives special scrutiny. *Ames v. Brown,* 2006 WL 1875374, *3 (10th Cir. July 07, 2006) (holding that officers forcing detainee to strip his pants and underwear because they were chemically contaminated and forcing him to stand in the front yard while the home is searched, and then transporting him to jail in this state of undress could be found unreasonable by a jury). While neither of these cases are "on all fours" with this case, the Court finds that they are sufficient to put officers on notice that it is unreasonable to force a detainee or arrestee to expose themselves unnecessarily. *Hill*, 311 F.3d at 904. The Court finds that the precedent cited above serves as sufficiently analogous precedent to put a reasonable officer on notice that unreasonably forcing someone to expose themselves while being detained or arrested violates

the Fourth Amendment. *Id*.

Lastly, Plaintiff must show that there are genuine issues of facts as to whether Defendants Harness and Monroe would have known that their actions violated Plaintiff's Fourth Amendment rights. *Brockington,* 503 F.3d at 672. "Qualified immunity [will] be defeated if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." *Harlow v. Fitzgerald,* 457 U.S. 800, 814, 102 S.Ct. 2727, 73 L.Ed. 396 (1982). The Ninth Circuit has stated "[w]e cannot conceive of a more basic subject of privacy than the naked body. The desire to shield one's unclothed figure from view of strangers ... is impelled by elementary self-respect and personal dignity." *York v. Story,* 324 F.2d 450, 455 (9th Cir. 1963).

Here, Plaintiff was pulled from the cab of her truck into the Truck Stop parking lot while she was wearing nothing but her panties. She was then forced to stand in the Truck Stop parking lot for twenty minutes while Defendant Harness searched her truck. During this twenty minutes she was exposed to other truckers passing through the public parking lot. Finally, Plaintiff was arrested and transported to the jail while still in only her panties. The Court recognizes that Plaintiff by her own admission was resisting and cursing the officers, but Defendants Harness and Monroe offer no explanation as to why Plaintiff was not given clothing once she was removed from the truck, subdued, and the officers were assured there was no threat of danger to themselves or others. Additionally, Defendant Harness in his deposition stated that he drove Plaintiff through the back roads to the jail in an effort to not expose her while she was unclothed. Considering the totality of the circumstances, in a light most favorable to the Plaintiff, the Court finds that Plaintiff has

presented facts on which a reasonable jury could determine that Defendants Harness and Monroe knew or should have known that the way in which they conducted Plaintiff's detention and arrest was unreasonable because it was unnecessarily painful, degrading, and invaded her privacy. *Franklin,* 31 F.3d at 875.

Plaintiff has asserted her Fourth Amendment rights have been violated. She has shown that these rights are clearly established and she has offered evidence to show that there are genuine issues of material facts as to whether Defendants Harness and Monroe would have known or reasonably should have known that their actions violated Plaintiff's Fourth Amendment rights. Accordingly, Defendants Harness and Monroe are not entitled to qualified immunity as to Plaintiff's Fourth Amendment claim of unreasonable seizure.

### 2) Cruel and Unusual Punishment

Again, in determining whether Defendants Harness and Monroe are entitled to qualified immunity, the Court must first determine whether Plaintiff has asserted a constitutional violation of her Eighth Amendment right to be free from cruel and unusual punishment. *Brockington,* 503 F.3d at 672. If the facts, taken in a light most favorable to Plaintiff, do not show a constitutional violation, the analysis ends and qualified immunity is granted. *Brockington*, 503 F.3d at 672.

In her Complaint, Plaintiff claims that Defendants Harness and Monroe violated her constitutional right to be free from cruel and unusual punishment under the Eighth Amendment. However, because plaintiff was a pretrial detainee, not a convicted prisoner, the Eighth Amendment is inapplicable to her situation. *See Spencer v. Knapheide Truck Equipment Co.*, 183 F.3d 902, 905 (8th Cir. 1999) (holding that the Eighth Amendment does not apply to claims by pretrial detainees, and instead the Fourteenth Amendment due process clause was applicable to plaintiff's claim

regarding an injury he received, while he was a pretrial detainee), *see also Davis v. Hall,* 992 F.2d 151, 152 (8th Cir. 1993) (holding plaintiff's claims of inadequate medical treatment while a pretrial detainee should not be analyzed under Eighth Amendment, and instead is properly analyzed under the due process clause of the Fourteenth Amendment). While the Court recognizes that the precedence applies the Eighth Amendment standard of deliberate indifference to the due process violations, Plaintiff here has asserted no Fourteenth Amendment due process violation in relation to her cruel and unusual punishment claim. Instead, the only argument Plaintiff makes under the heading of cruel and unusual punishment is the assertion that Defendants Harness and Monroe violated her right to privacy when they placed her in public view while nearly nude. The Court is unable to find any precedent applying the Eighth Amendment's cruel and unusual punishment standard of deliberate indifference to a Fourth Amendment right to privacy violation. Therefore, the Court finds that Plaintiff has not created a genuine issue of material fact regarding her Eighth Amendment claim. Therefore, there is no need to analyze the second and third prongs of the qualified immunity test in relation to this claim. Defendants Harness and Monroe are entitled to qualified immunity against Plaintiff's Eighth Amendment cruel and unusual punishment claim.

## CONCLUSION

For reasons discussed herein and above, the Court finds that Defendants' Motion for Summary Judgment should be and hereby is **GRANTED** in part and **DENIED** in part. The Motion is granted with regard to Defendants City of Texarkana, Arkansas and Defendants Todd Harness and Holly Monroe in their official capacity as police officers for the City of Texarkana. Plaintiff's official capacity claims against all Defendants are hereby **DISMISSED WITH PREJUDICE**. The Motion is also granted with regard to Plaintiff's claim of cruel and unusual punishment under the Eighth

Amendment against Defendants Harness and Monroe individually. Plaintiff's Eighth Amendment claims against Defendants Todd Harness and Holly Monroe individually are **DISMISSED WITH PREJUDICE**. The Motion is **DENIED** with regard to Plaintiff's Fourth Amendment claim against Defendants Todd Harness and Holly Monroe individually. An order of even date, consistent with this opinion, shall issue.

      **IT IS SO ORDERED,** this 14th day of May, 2009.

                                                               /s/ Harry F. Barnes  
                                                              Hon. Harry F. Barnes  
                                                               United States District Judge